# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| SHAWN PORTER, | ) CASE NO. 5:23-CV-01446-CEH |
| | ) |
| Plaintiff, | ) CARMEN E. HENDERSON |
| | ) UNITED STATES MAGISTRATE JUDGE |
| v. | ) |
| | ) **MEMORANDUM OF OPINION &** |
| JACKSON TOWNSHIP HIGHWAY | ) **ORDER** |
| DEPARTMENT, JACKSON TOWNSHIP | ) |
| BOARD OF TRUSTEES, JOHN DOE, | ) |
| | ) |
| Defendants, | |

This matter is before the Court on Defendants Jackson Township High Department's and Jackson Township Board of Trustees' motion for summary judgment. (ECF No. 15). Plaintiff Shawn Porter ("Plaintiff" or "Porter") opposed the motion (ECF No. 17) and Defendants replied in support (ECF No. 18). The Court has reviewed the parties' briefs, exhibits, and relevant case law and for the following reasons GRANTS Defendants' motion. Plaintiff's Complaint is dismissed in its entirety.

## I.     SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) lays out the standard for summary judgment motions. It provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, the court views the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Tokmenko v. MetroHealth System*, 488 F. Supp. 3d 571, 576 (N.D. Ohio 2020) ("A dispute about a fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). Determining whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party must make a prima facie showing that it is entitled to summary judgment, and it bears the burden of production. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential

element of the nonmoving party's claim" or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.*

If the moving party meets its burden of production, then the non-moving party must point out specific facts in the record that create a genuine issue of material fact. *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). The non-moving party must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Zinn*, 885 F. Supp. 2d at 871 (quoting *Fulson*, 801 F. Supp. at 4). Moreover, the trial court does not have "a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citation omitted).

## II.     FACTS & PROCEDURAL HISTORY

Porter was hired by Defendants on October 15, 2012, as a Labor Specialist in the Public Works Department of the Township's Highway Division. As a Labor Specialist, Porter's essential duties included several tasks requiring manual labor, including using power tools, digging ditches, and using sledgehammers, picks, or air hammers to dig up pavement. In January 2021, Porter injured his shoulder while not at work. The injury required surgery, which put him off work. Porter began taking leave under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA") on February 18, 2021, the date of his surgery. Following surgery, Porter's doctor wrote that Porter was "totally disabled" and unable to return to work until May 20, 2021. (*See* ECF Nos. 13-13, 13-17, 13-20). Porter's doctor stated that he could return to work as of May 20, 2021, with certain restrictions: no overhead lifting, no lifting over ten pounds, and no digging holes by hand. (*See*

ECF Nos. 13-17, 13-20). These medical restrictions were to continue until Porter's next appointment on June 18, 2021. (*See* ECF No. 13-20). On or about May 17, 2021, Porter emailed the Highway Department Superintendent Rich Rohn seeking a return to work with the restrictions imposed by his doctor. (ECF No. 13-21). Rohn responded that there were no "light duty" assignments or assignments with restrictions within the Public Works Department and advised Porter to proceed with a request for unpaid leave. (*Id.*).

In May when his FMLA leave balance was exhausted, Defendants placed Porter on vacation time (40 hours) followed by an unpaid leave of absence from, May 20, 2021, through June 18, 2021. During the time he was absent without pay, Porter was responsible to pay his share of extended health benefits, while the Township paid its share.

In late May 2021, Defendants became aware that Porter may have been conducting manual labor construction activities and hired a private investigator, Scott Steidl, in order to confirm or deny these allegations. (ECF No. 15-1 at 2). Steidl observed Porter for several weeks in May/June. (*Id.*). On June 2, 2021, Steidl followed Porter as he went about his day. Steidl reported back to Defendants that Porter was performing construction activities and appeared to have shown no deficits or struggles with movement, such as lifting, bending, or carrying items. Steidl filmed Porter performing work at his brother-in-law's home in Akron showing Porter bending at the waist using a tape measure and chalk line, using both arms as he worked in the yard, and operating a concrete saw. (ECF No. 13-35).[1] Porter concedes that on June 2, 2021, he was "chalk lining, measuring, and showing [his brother-in-law] how to cut a sidewalk…" (ECF No. 13 at 165).

---

[1] The June 2, 2021, video footage was provided to the Court under manual filing. (ECF No. 13-48).

On or about June 18, 2021, Porter provided the Defendants with another medical restriction note, which again stated that he could return to work with the same prior restrictions: no overhead lifting, no lifting over 10 lbs., and no digging holes by hand. (ECF No. 13-26). This medical restriction note was dated to cover the period from June 21, 2021, through his next evaluation on July 9, 2021. On June 21, 2021, Rohn submitted a *Statement of Charges* to the Township Administrator, Michael Vaccaro. (ECF No. 13-33). Within the statement, Rohn referenced both the Collective Bargaining Agreement ("CBA") and Jackson Township Personnel Policy, specifically Article 13, Sick Leave Pay, Section 6, *Falsification/Abuse* and General Conduct Policy, Section 2, *Progressive Discipline,* Items E, *Falsification of Records,* and K, *Other Offenses Similarly Serious in Nature,* to include *dishonesty.* (ECF No. 13-33). The statement explained that:

> On May 17, 2021, Shawn P. Porter submitted a request to his employer requesting an unpaid leave of absence from May 20, 2021 through June 18, 2021. Shawn P. Porter's request for the unpaid leave of absence from May 20, 2021 through June 18, 2021, was based on Dr. Bickett's May 13, 2021 document indicating Shawn P. Porter was "totally disabled from work from May 7, 2021 to May 19, 2021". On May 24, 2021, the Board of Trustees approved Shawn P. Porter's request for an unpaid leave of absence commencing May 20, 2021 through June 18, 2021.
>
> On June 2, 2021, Shawn P. Porter was observed to be working at a residence [in] Akron, OH. While working, Shawn P. Porter was seen using a tape measure, chalk line and operating a power concrete saw. Shawn P. Porter's actions, including the performance of manual labor and the operation of heavy equipment, on June 2, 2021 appear to be in violation of the restrictions/limitations imposed by Dr. Bickett and suggest he was under no disability.

(ECF No. 13-33 at 3). The explanation was "based on an Administrative Investigation conducted by the Director of Public Works, Rich Rohn." (*Id.*). Rohn recommended Porter's termination as a result of the investigation. (*Id.*). The matter was then scheduled for a pre-disciplinary conference.

Porter's pre-disciplinary conference was held on June 28, 2021, before Jackson Township Fire Chief Timothy Berczik. (ECF No. 13-34). Porter was represented by his Union representative,

Rich Cossell, at the hearing. (*Id*.). At the conclusion of the conference, Chief Berczik found that Porter was either not compliant with his surgeon's restrictions or was more able to perform work than he let on. (*Id*.). Chief Berczik determined that Porter had "abused the privilege of being place[d] on *unpaid leave status* while still receiving extended medical benefits twice during the course of this situation" and there was just cause to terminate Porter's employment. (*Id*.). Following Porter's unsuccessful challenge to Chief Berczik's findings and recommendation, the Township's Board of Trustees terminated Porter's employment effective July 6, 2021. (ECF No. 13-38).

On July 5, 2023, Porter filed a complaint against Defendants in the Stark County Court of Common Pleas alleging four claims for relief: (1) intentional infliction of emotional distress under Ohio common law; (2) violation of the FMLA; (3) retaliation under the FMLA, and (4) invasion of privacy under Ohio common law. (ECF No. 1-2 at 3-4). Defendants removed the matter to federal court on July 25, 2023, asserting that this Court has original jurisdiction over the federal claims in this civil action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the remaining state claims in this action pursuant to 28 U.S.C. § 1367. (ECF No. 1 at 2). Defendants denied all allegations in its Answer to the Complaint on July 26, 2023. (ECF No. 3). On August 15, 2023, this case was transferred to the undersigned for all further proceedings upon consent of the parties. (ECF No. 7).

On January 12, 2024, Defendants moved for summary judgment on each of Porter's four claims. (ECF No. 15). Porter opposed Defendants' motion, addressing his retaliation and invasion of privacy claims. (ECF No. 17 at 7-11). Defendants then replied in support of their motion for summary judgment. (ECF No. 18).

### III.    LAW & ANALYSIS

### a. FMLA Claims

In Counts 2 and 3, Porter alleged that Defendants violated the FMLA and retaliated against him by terminating his employment. Defendants interpreted Count 2 as a claim for interference with FMLA (ECF No. 15) and later argued that Porter abandoned Count 2 by not addressing it in response to the motion for summary judgment (ECF No. 18 at 3). Defendants also argued that Count 3's claim for retaliation should be dismissed because Porter failed to establish that Defendants' reason for terminating his employment was pretextual. (*Id*. at 5).

The FMLA provides: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). The FMLA further provides: "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Thus, two separate theories of recovery are available under the FMLA: interference with the exercise of FMLA rights, and retaliation against an employee's opposition to an unlawful FMLA practice. *Id*. at § 2615(a)(1) and (2); *See Seeger v. Cincinnati Bell Tel. Co*., 681 F.3d 274, 282 (6th Cir. 2012).

To establish a claim for interference under the FMLA, a plaintiff must demonstrate that:

> (1) he is an eligible employee, (2) the defendant is an employer as defined under the FMLA, (3) the employee was entitled to leave under the FMLA, (4) the employee gave the employer notice of his intention to take leave, and (5) the employer denied the employee FMLA benefits to which he was entitled.

*Tennial v. United Parcel Serv., Inc*., 840 F.3d 292, 308 (6th Cir. 2016) (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)). "A benefit is denied if an 'employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave.'" *Id.* (quoting *Arban v. W. Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003).

7

A prima facie case of FMLA retaliation requires that a plaintiff show that (1) he was engaged in an activity protected by the FMLA; (2) the employer knew that he was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012). Where, as here, a plaintiff relies on indirect evidence, an FMLA claim is evaluated under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Donald*, 667 F.3d at 762. If the plaintiff supports his prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment decision. *Seeger*, 681 F.3d at 284; *Tillman v. Ohio Bell Tel*. Co., 545 Fed. App'x 340, 349 (6th Cir. 2013). If the employer carries its burden, then the burden of production returns to the plaintiff to demonstrate pretext by demonstrating that the proffered reason either had no basis in fact, did not actually motivate the action, or was insufficient to warrant the action. *Seeger*, 681 F.3d at 285; *Tillman*, 545 Fed. App'x at 349.

In Count 2, Porter asserts that his "wrongful termination" was a "willful, knowing, and/or reckless violation of the FMLA." (ECF No. 1-2 at 4). In Count 3, Porter claimed "Defendants willfully, knowingly, and/or recklessly retaliated against [him] for taking FMLA leave and engaging in the lawfully protected activity." (*Id*.). Defendants initially interpreted Count 2 as raising an interference claim and argued that they did not interfere with Porter's rights because they granted each of his leave requests. (ECF Nos. 15 at 16). Porter's response brief does not directly address this argument, and the only actionable conduct the brief identifies is the alleged retaliatory termination. (*See* ECF No. 17 at 9 (When addressing the FMLA claim, Porter concludes that "a reasonable juror could find that Mr. Porter established a prima facie case of FMLA

[retaliation] against the Defendant employers.")). In reply, Defendants assert that Porter abandoned Count 2 to the extent it raised an interference with the FMLA claim. This Court agrees with Defendants that Count 2 does not involve an interference with the FMLA claim and, instead, "the essence of [Porter's] claim is retaliation, not interference with his substantive FMLA rights." *See Seeger,* 681 F.3d at 282 (analyzing interference and retaliation claims together where defendant granted plaintiff "all of the FMLA leave to which he was entitled" and the only issue was defendant's reason for terminating plaintiff). Nevertheless, even assuming Porter intended to raise an interference with the FMLA claim, it would fail as he cannot establish that Defendants denied him any FMLA benefit to which he was entitled, the fifth element of an interference claim.

First, the evidence demonstrates that Porter was never denied FMLA leave. Porter requested FMLA leave following his shoulder surgery. (ECF No. 13 at 83). Defendants granted the request. (ECF No. 13-9). Porter exhausted his FMLA leave and was, at his request, placed on leave without pay. (*See* ECF No. 13-21, 13-22, 13-29). Porter acknowledged in his deposition that Defendants never denied his FMLA leave request. (*See* ECF No. 13 at 61-62). Accordingly, Defendants produced evidence showing that Porter was allowed to take his FMLA leave, and Porter has not produced any evidence showing that Defendants interfered with the FMLA-created right to take medical leave. *See Seeger*, 681 F.3d at 282.

Second, Porter cannot demonstrate that Defendants denied his FMLA benefit by interfering with his *reinstatement* following his use of FMLA leave. *See Tennial*, 840 F.3d at 308 ("A benefit is denied if an 'employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave"). Porter's response includes a single sentence arguably related to an interference with FMLA claim: "In early March of 2021, [he] sought to return to work on light duty, his light duty request was denied by Defendants." (ECF No. 17 at 8). However, Porter

cannot show that Defendants interfered with his right to reinstatement following his use of FMLA leave. Following the exhaustion of his FMLA leave, Porter provided a note from his doctor that he could return to work with specific limitations. (ECF No. 13-21 at 2). Defendants responded that they did not offer "light duty" to any employees in the Highway Department (*Id.* at 1). Defendants also provided evidence that the applicable collective bargaining agreement ("CBA") "does not provide for light duty associated with a personal illness or personal injury." (*See* ECF Nos. 13-11, 13-46 at 5-6, 13-14 at 4). Porter does not contradict, and in fact acknowledged, that Defendants do not offer the "light duty" placement he requested. (*See* ECF No. 13 at 89-90; ECF No. 13-14 at 4 ("I understand that Jackson township administration has declined my return for light duty and has no such program.").[2] Because there was no right to a "light duty" reinstatement following FMLA leave, there is no genuine issue of material fact that Porter was not denied a benefit to which he was entitled. Accordingly, Porter cannot establish the fifth element of an interference claim.

Turning then to FMLA retaliation, for the purposes of their motion for summary judgment, Defendants acknowledged that Porter could establish his prima facie case: (1) Porter utilized FMLA leave; (2) Defendants were aware of his use of FMLA leave; (3) Defendants terminated Porter; and (4) two months passed between Porter's termination and his use of FMLA. (ECF No. 15 at 13 (citing *Santoli v. Vill. Of Walton Hills*, No. 1:12CV1022, 2015 WL 1011384, at *6, fn.6 (N.D. Ohio Mar. 3, 2015) (citations omitted)). *See Render v. FCA US, LLC*, 53 F.4th 905, 921 (6th Cir. 2022) (reiterating that the required causal connection element can be established solely by

---

[2] Although Porter states that Defendants allowed "other employees" to perform "light duty" work, he fails to support this assertion with any facts or evidence. (*See* ECF No. 17 at 9). *Painter v. Woodstream Corp.*, No. 1:18 CV 2872, 2022 WL 1308663, at *2 (N.D. Ohio Mar. 31, 2022), *appeal dismissed*, No. 22-3405, 2022 WL 16579624 (6th Cir. Sept. 8, 2022) (citing *Zinn*, 885 F.Supp.2d at 871) ("If the moving party meets its burden of production, then the non-moving party must point out specific facts in the record which create a genuine issue of material fact.").

temporal proximity of up to two to three months between the protected activity and the adverse action).

Having established the prima facie case for retaliation, the burden of production moves to Defendants to provide a legitimate, nondiscriminatory reason for terminating Porter. *Render v. FCA US, LLC*, 53 F.4th 905, 921 (6th Cir. 2022), *reh'g denied*, No. 21-2851, 2022 WL 18431480 (6th Cir. Dec. 28, 2022). Defendants asserted that they terminated Porter because he falsified his requests for necessary medical leave and abused Defendants' sick leave policy. (ECF Nos. 13-34 at 3-4, 13-38). "Fraud and dishonesty constitute lawful, non-retaliatory bases for termination." *Seeger*, 681 F.3d at 284.

The burden then shifts back to Porter to show that Defendants' given reason was pretextual. *Render*, 53 F.4th 905, 921 (citations omitted). A plaintiff may meet his or her burden to demonstrate pretext by showing that the proffered reason "(1) [has] no basis in fact, (2) did not actually motivate [defendant's] action, or (3) [was] insufficient to warrant [the adverse] action." *Smyer v. Kroger Ltd. P'ship I*, No. 22-3692, 2024 WL 1007116, at *4 (6th Cir. Mar. 8, 2024) (citing *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 612 (6th Cir. 2019) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009))).

It is unclear which of the three *Chen* paths Porter argues supports a finding of pretext. Nonetheless, Porter failed to meet his burden under all three. Porter's argument for pretext is as follows:

> Insofar as Defendants refused to allow Mr. Porter to return to work on light duty in early March of 2021 as they had for other employees, the asserted reasons by the Defendants of alleged fraud and abuse of FMLA leave are a mere pretext. (Doc #13, Deposition at pgs. 99, 132-134).
>
> The only evidence of Defendants allegations against Mr. Porter to justify their retaliatory termination was the video and affidavit of a private investigator, Scott

Steidl, whom Defendants had hired. (Doc #13, Deposition at pgs.129-131, 144-147, 150, 152- 154,161-67). On June 2, 2021, Mr. Porter was allegedly observed and videotaped holding an electric concrete saw belonging to a contractor working at his brother-in-law's home, which Defendants believed to weigh more than the 10 [pound] weight restriction imposed by Mr. Porter's physician. (Doc #13, Deposition at pgs. 154-156). However, the concrete saw was never weighed, and no similar saw was weighed or entered into evidence at the pre-disposition hearing. (Doc #13, Deposition at pg. 161-166). Mr. Porter denied violating his physician's work restrictions. (Doc #13, Deposition at pg. 163-166).

(ECF No. 17 at 9-10).

Under the first *Chen* method, the plaintiff attacks the credibility of the employer's proffered reason by showing that the employer did not actually have cause to take the adverse action. *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 791 (6th Cir. 2006); *Seeger*, 681 F.3d at 285. However, "'[a]s long as an employer has an honest belief in its proffered nondiscriminatory reason,' the employee cannot establish pretext simply because the reason is ultimately shown to be incorrect." *Jones v. St. Jude Med. S.C., Inc.*, 504 F. App'x 473, 477 (6th Cir. 2012) (quoting *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). "The key in assessing whether an employer had an honest belief is 'whether the employer made a reasonably informed and considered decision before taking an adverse employment action.'" *Id*. (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)). "An employer has an honest belief in its rationale when it 'reasonably relied on the particularized facts that were before it at the time the decision was made.'" *Id*. (quoting *Majewski*, 274 F.3d at 1117) (additional quotation marks and citation omitted). To demonstrate pretext, "a plaintiff must 'put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action.'" *Braithwaite v. Timken Co*., 258 F.3d 488, 494 (6th Cir. 2001) (citing *Smith*, 155 F.3d at 806–07). Here, Porter has not met his burden.

Porter failed to cite any evidence suggesting that Defendants did not hold an honest belief in the reasons for terminating him or that they failed to make a "reasonably informed and considered decision." *See Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496 (6th Cir. 2007). Defendants stated that they terminated Porter because he violated his doctor's orders restricting him to no overhead lifting, not lifting anything over ten pounds, an no digging holes by hand, while on unpaid leave status receiving medical benefits in violation of the leave policy. Defendants' basis for their belief that Porter violated his doctor's orders includes the investigation summary of their private investigator, Scott Steidl, who conducted surveillance of Porter over several days in late May and the first half of June 2021. (ECF No. 15-1 at 5-11). On June 2, 2021, Steidl filmed Porter performing work at a residence. The video depicted Porter bending at the waist using a tape measure and chalk line, using both arms as he worked in the yard, and operating a concrete saw. (ECF No. 13-35 at ¶9). Porter conceded that on June 2, 2021, he was "chalk lining, measuring, and showing [his brother-in-law] how to cut a sidewalk…" (ECF No. 13 at 162). The evidence in the record indicates that at the time the decision was made to terminate Porter, Defendants believed that the concrete saw likely weighed over ten pounds. (ECF No. 15-1 at 3). Although Porter disputes that Defendants proved the weight of the saw and that he was in violation of his work restrictions, he has failed to put forth any evidence demonstrating that Defendants did not "honestly believe" that he was engaging in work in violation of his medical restrictions. *Braithwaite*, 258 F.3d at 494.

This Court finds that Defendants held an honest belief that Porter had been engaging in activities that were in violation of his work restrictions while on unpaid leave status and collecting medical benefits. Defendants learned that Porter was perhaps engaging in such activities and, thereafter, hired an investigator to follow Porter. The investigator watched Porter over several

weeks, during which time he witnessed and filmed Porter operating a concrete saw, which was believed to weigh over ten pounds. The video depicts an individual who appears to be Porter using, lifting, holding, and manipulating a concrete saw. All told, Defendants' investigation was "reasonably informed," and the decision was "considered." *Smith*, 155 F.3d at 807. Porter presents no evidence to the contrary and, instead, simply argues that he was not in violation of his doctor's orders and was only showing his brother-in-law how to use the saw. However, the inquiry is not whether Porter's actions actually violated his medical restrictions but is instead whether Defendants honestly believed as much. *See Seeger*, 681 F.3d at 285. Porter fails to show that Defendants' reasons for terminating him had no basis in fact.

Under the second *Chen* method, the plaintiff must "produce evidence demonstrating that the proffered reason was an insufficient basis upon which to rest his termination." *Joostberns,* 166 F. App'x at 795. Porter does not produce evidence showing that the proffered reason was insufficient to lead to termination. According to Defendants' employee policy and the CBA, falsification of records and/or dishonesty could lead to an employee's termination. (ECF No. 13-33 at 1-2; 13-45 at 1; 13-45 at 15). Porter does not dispute this.

Under the third method, a plaintiff must "produce evidence demonstrating that the proffered reason was not the actual reason for his termination." *Joostberns,* 166 F. App'x at 791. To establish pretext Porter arguably points to two sources of evidence: (1) the timing of his termination, and (2) Defendants' allegedly different treatment of other employees who required "light work" restrictions. None of this evidence, however, is sufficient for a reasonable juror to find in his favor.

First, the Sixth Circuit Court of Appeals has made clear that although temporal proximity alone may demonstrate a causal connection to establish the prima facie case, temporal proximity

alone is insufficient to demonstrate pretext at the final step of the *McDonnell Douglas* framework. *See Donald*, 667 F.3d at 763 ("[T]he law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext.") (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001) ("[T]emporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual."). Thus, Porter needs to do more to show that Defendants fired him in retaliation for taking FMLA leave.

Porter attempts to show pretext by claiming that he was denied "light work" assignment when other employees had been granted such a request. (*See* ECF No. 17 at 9 ("Insofar as Defendants refused to allow Mr. Porter to return to work on light duty in early March of 2021 as they had for other employees, the asserted reasons by the Defendants of alleged fraud and abuse of FMLA leave are a mere pretext.")). During his deposition, Porter claimed that another employee, "Tom Shonk", had been allowed to perform light duty work such as "always do light machine, drive a truck, do light duty work all the time." (*See* ECF No. 13 at 136). At the third step of the *McDonnell Douglas* framework, the burden is on Porter to present evidence that the proffered reason is pretext. Defendants put forth evidence that "light duty" assignments were not offered to any employees in the Highway Department, and that the CBA "does not provide for light duty associated with a personal illness or personal injury." (*See* ECF Nos. 13-11, 13-46 at 5-6, and 13 at 86-87, 98). Porter acknowledged that the township did not have a program that would allow him to return for "light duty" work. (ECF No. 13-14 at 4). Porter offers no evidence about Mr. Shonk's employment, sickness, injury, work restrictions, or any evidence at all, thus rendering him an "inappropriate comparator for the purposes of pretext." *Santiago v. Meyer Tool Inc*., No. 22-3800, 2023 WL 3886405, at *7 (6th Cir. June 8, 2023). Porter's unsupported and rebutted contention is insufficient to create a genuine issue of material fact sufficient to support a claim of

pretext. *See, e.g.*, *Robinson v. MGM Grand Detroit, LLC*, 530–31 (6th Cir. 2020) (citing *Bell v. Ohio State Univ.*, 351 F.3d 240, 253–54 (6th Cir. 2003); *Chandler v. Regions Bank*, 573 F. App'x 525, 528–29 (6th Cir. 2014); *Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993)).

Accordingly, Porter fails to establish that Defendants' reason for terminating his employment was pretextual. Thus, Porter's claim for retaliation in violation of the FMLA fails.

### b. State Law Claim for IIED

Porter asserted a claim for IIED under state law. Defendants argue that by failing to address the claim in his opposition brief, Porter abandoned his IIED claim. (ECF No. 18 (citing *Bell v. Toledo Gaming Ventures, LLC*, No. 3:21-cv-770, 2023 WL 6383627, at *7 (N.D. Ohio Sept. 30, 2023), 2023 U.S. Dist. LEXIS 176399, at *28 (Sep. 30, 2023) (citing *Brown v. VHS of Michigan, Inc*. 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases that hold "a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment")).

The Sixth Circuit has repeatedly stated in unreported opinions that "a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown*, 545 F. App'x at 372 (citing *Hicks v. Concorde Career Coll*., 449 F. App'x 484, 487 (6th Cir. 2011); *Clark v. City of Dublin*, 178 F. App'x 522, 524–25 (6th Cir. 2006); *Conner v. Hardee's Food Sys*., 65 F. App'x 19, 24–25 (6th Cir. 2003)). *See also Colston v. Cleveland Pub. Library*, No. 1:12-cv-204, 2012 WL 3309663, at *2 n. 2 (N.D. Ohio Aug. 13, 2012) (deeming a claim abandoned and granting summary judgment when a plaintiff "did not respond or even mention [the] claim in her opposition to Defendants' motions for summary judgment"); *Cook v. Springfield Twp*., No. 5:20-CV-665, 2023 WL 6311344, at *23 (N.D. Ohio Sept. 28, 2023)

(deeming state law claims abandoned where plaintiff made no attempt to argue the claims in response to defendants' motions for summary judgment). In reported its opinions, however, the Sixth Circuit states that "even where a motion for summary judgment is unopposed, a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014). The district court retains this obligation, because "[a] party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant." *Id.* (citing *Smith v. Hudson*, 600 F.2d 60, 64 (6th Cir. 1979)). Consequently, if an abandonment argument is premised solely on a plaintiff's silence in response to the defendant's arguments, the court "must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists" before granting summary judgment on those particular claims. *Id.*; *Briggs v. Univ. of Detroit-Mercy*, 611 F. App'x 865, 870 (6th Cir. 2015) ("a district court may not use a party's failure to respond (in whole or in part) as a reason for granting summary judgment 'without first examining all the materials properly before it under Rule 56(c).'"). However, a district court is not obligated to "sua sponte comb the record from the partisan perspective of an advocate for the non-moving party." *Id.* at 630, n. 11 (quoting *Guarino v. Brookfield Tp. Trs.*, 980 F.2d 399, 410 (6th Cir. 1992)).

To make an intentional infliction of emotional distress claim, a plaintiff must show that:

> (1) the defendant intentionally or recklessly caused the plaintiff serious emotional distress; (2) the defendant's conduct was "extreme and outrageous"; and (3) the defendant's conduct proximately caused the plaintiff serious emotional distress.

*Fry v. Wheatland Tube, LLC*, 2019-Ohio-1453, ¶ 97, 135 N.E.3d 420 (Ohio App. 5th Dist. 2019) (quoting *White v. Bhatt*, 5th Dist., 2017-Ohio-9277, 102 N.E.3d 607, ¶ 36, *appeal not allowed*,

152 Ohio St.3d 1479, 2018-Ohio-1990, 98 N.E.3d 294, 2018 WL 2357186, ¶ 36 (2018) citing *Phung v. Waste Mgmt., Inc.* (1994), 71 Ohio St.3d 408, 410, 644 N.E.2d 286; *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 453 N.E.2d 666, syllabus (overruled on other grounds). "[L]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Alabsi v. City of Cleveland,* No. 22-3375, 2023 WL 334893, at *5 (6th Cir. Jan. 20, 2023) (quoting *Yeager,* 453 N.E.2d at 671). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Yeager*, 453 N.E.2d at 671. Liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* (citation omitted).

Based on a review of the materials before the Court it appears that Porter has abandoned his IIED claim. *See E.M.A. Nationwide, Inc*., 767 F.3d at 630. Porter alleged that he suffered a shoulder injury on or about December 31, 2019, which later required surgery. (ECF No. 1-2 at 2). Following surgery Porter's doctor placed him on work restrictions including no overhead lifting, no lifting over ten pounds, and no digging holes by hand. (ECF No. 1-2 at 2). Porter was granted and exhausted his FMLA leave and was approved for an unpaid leave of absence from May 24, 2021, through June 18, 2021. On June 2, 2021, a private investigator hired by Defendants witnessed and recorded Porter performing work at a home, which included: bending at the waist, using a tape measure and chalk line, using both arms as he worked in the yard, and operating a concrete saw. (ECF No. 15-1). Following a pre-disciplinary hearing, Defendants terminated Porter. (ECF No. 1-2 at 3). Porter provided no factual allegations beyond the foregoing account of his termination to support his position that Defendants' conduct qualifies as "extreme and

18

outrageous." Indeed, the record shows that Porter himself does not view his termination as extreme or outrageous. In his deposition, Porter testified as follows:

> "Q: Do you believe that the Township engaged in extreme and outrageous behavior in the termination process and, ultimately, the termination of your employment?
> A: Like out of the ordinary?
> Q: Yes.
> A: Extreme and outrageous? I don't know that I would say that. […] I don't think I would say something like that."

(ECF No. 13 at 192-193).

Based on these facts, Defendants' conduct does not rise to the level of being extreme and outrageous or going "beyond all possible bounds of decency, [or being] regarded as atrocious, [or] utterly intolerable in a civilized community." *Yeager*, 453 N.E.2d at 671. Even Porter himself has not cried out "Outrageous!" *Id.* Porter's Complaint alleges "serious emotional distress" as a result of his termination (ECF No. 1-2 at 3), yet he made no argument to salvage his IIED claim against Defendants following their motion for summary judgment (*see* ECF No. 17). Accordingly, this Court finds that Porter has abandoned his IIED claim.

This Court recognizes that typically "a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (citing 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Hankins v. The Gap, Inc*., 84 F.3d 797, 803 (6th Cir. 1996); *Gaff v. Fed. Deposit Ins. Corp*., 814 F.2d 311, 319 (6th Cir. 1987); *Landefeld*, 994 F.2d at 1182.). "Residual jurisdiction should be exercised only in cases where the 'interests of judicial economy and the avoidance of multiplicity of litigation' outweigh our concern over 'needlessly deciding

state law issues.'" *Id.* (quoting *Landefeld*, 994 F.2d at 1182 (quoting *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991))). Thus, in the "ordinary case," the exercise of supplemental jurisdiction is improper after all federal claims have been dismissed. *See Moon*, 465 F.3d at 728.

This is an example of a case where the interests of judicial economy encourage this Court to exercise residual jurisdiction. Even assuming the correctness of each of Porter's allegations and that his statements are not merely conclusory, Defendants' conduct was not extreme and outrageous. *Stewart v. Suarez Corp. Indus.*, No. 5:15–cv–1425, 2015 WL 8272951, *5 (N.D. Ohio Dec. 8, 2015). "An employee's termination, even if based upon discrimination, does not rise to the level or 'extreme and outrageous conduct' without proof of something more." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1111 (6th Cir. 2008) (citing *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999)); *Lopez v. Am. Family Ins. Co.*, 618 Fed. Appx. 794, 805 (6th Cir. 2015). Because Porter failed to allege "proof of something more," Defendants' conduct does not rise to the level of "extreme and outrageous." *See Culler v. Exal Corp.*, 193 F. Supp. 3d 850, 853 (N.D. Ohio 2016). Moreover, Porter failed to defend or otherwise address his IIED claim in response to Defendants' motion. The lack of "something more" in combination with Porter's abandonment of the claim on summary judgment weigh strongly in favor of resolution of the claim at this time.

Accordingly, in the interest of judicial economy, this Court exercises its residual jurisdiction and DISMISSES Porter's claim for IIED. *See Moon*, 465 F.3d at 728.

### c. State Law Claim for Invasion of Privacy

Porter alleges that Defendants' agent invaded his privacy when he conducted surveillance of Porter's personal life without his knowledge or consent. (ECF No. 1-2 at 5).   Defendants argue that Porter's claim fails because the hired investigator filmed Porter while Porter was outside and in public view. (ECF No. 15 at 24). In response, Porter states that he was filmed while "at his brother-in-law's private home" and that such filming was an intrusion upon his "'solitude or seclusion' or [his] private affairs or concerns". (ECF No. 17 at 11). In reply, Defendants argue that "[i]t is undisputed that Plaintiff was standing outside of his brother-in-law's residence, in public view" and Ohio law is "clear that Plaintiff had no expectation of privacy in his brother-in-law's yard/on his sidewalk." (ECF No. 18 at 7).

In the interests of judicial economy and the avoidance of multiplicity of litigation, this Court again asserts residual jurisdiction over Porter's state law claim for invasion of privacy. Under Ohio law, "[a]n actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Amadio v. Skovira*, 191 F.Supp.2d 898, 902 (N.D. Ohio 2002) (citing *Housh v. Peth*, 165 Ohio St. 35, 133 N.E.2d 340, syllabus (1956)). In order to sustain an invasion of privacy claim, a plaintiff must establish that defendants intruded into his or her private affairs and that such an intrusion would "shock the ordinary person to the point of emotional distress." *Amadio*, 191 F.Supp.2d at 902 (citing *Haller v. Phillips*, 69 Ohio App.3d 574, 577, 591 N.E.2d 305 (1990)). An invasion of privacy claim "must involve the viewing of affairs that are private and not in public view." *Id*. (citing *York v. General Electric Co.*, 144 Ohio App.3d 191, 194, 759 N.E.2d 865 (2001)).

Porter argues that Defendants intruded into his privacy by "follow[ing] and videotap[ing] [him] at his brother-in-law's private home . . . [while] holding a tape measure, using a saw, and bending/kneeling[.]" (ECF No. 17 at 10-11). Defendants argue that Porter had no expectation of privacy as he was performing the work outside of his brother-in-law's home in public view. (ECF No. 15 at 19). "Photographing of appellant's house or vehicles parked in front of the house would not constitute an invasion of privacy under these conditions." *Branan v. Mac Tools*, 2004-Ohio-5574, ¶ 43. Defendants acknowledge that parts of the recording depict Porter while in his brother-in-law's backyard. (ECF No. 13-35). There is no "blanket" rule that precludes an invasion of privacy claim when a viewing occurs outside the home. *See Mangelluzzi v. Morley*, 40 N.E.3d 588, 594 (Ohio App. 8th Dist. 2015) (rejecting the defendants' argument that "photographing or videotaping individuals in their backyard cannot support an invasion of privacy claim because a person's backyard is not 'private'"). However, courts that have allowed invasion of privacy claims where the viewing occurred in backyards involved a defendant who made egregious efforts to view private affairs. *See e.g. Feasby v. Logan*, 2023-Ohio-4478, ¶ 23 (Ohio App. 3d Dist. Dec. 11, 2023) (plaintiff adequately pleaded invasion of privacy where facts stated that defendants invaded plaintiff's privacy by installing a security camera "so that they could see over the embankment being built by the [plaintiff]."); *Mangelluzzi* at 40 N.E.3d at 594 ("despite the Mangelluzzis installing 'an additional $10,000 worth of fencing to stop defendants from videotaping' the Mangelluzzis' children, '[d]efendants have responded by climbing to the top of their children's swing sets in order to continue to videotape them' "). The Court has viewed the contents of the recording provided by Defendants and it depicts Porter in a driveway, where cars pass by on the road in front; inside a garage with the doors open, where cars continue to drive by on the road in front; and in a yard, at times through a chain-link fence and at times completely unobstructed.

(ECF No. at 13-48). There is no suggestion that the investigator climbed a fence or wall in order to gain access to view Porter's activities and Porter does not "point out specific facts in the record that create a genuine issue of material fact." *Zinn*, 885 F. Supp. 2d at 871.

Accordingly, Porter's claim for invasion of privacy fails as a matter of law.

## IV.    CONCLUSION

For the reasons stated above, the Court finds that there are no genuine issues of material fact, and that Defendants are entitled to judgment as a matter of law as to each of Porter's claims. Accordingly, Defendants motion of summary judgment (ECF No. 15) is hereby GRANTED.

**IT IS SO ORDERED.**

DATED: May 15, 2024

_____*s/Carmen E. Henderson*_____
Carmen E. Henderson
United States Magistrate Judge